UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CASIMIR E. KIELBASA,

           Plaintiff,

v.                                        Case No. 23-cv-817-pp

STEPHANIE REYNOLDS, *et al.*,

           Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 41), DENYING PLAINTIFF'S MOTION TO SEAL (DKT. NO. 51), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 53), DENYING PLAINTIFF'S MOTION TO DISMISS, DENY OR STAY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 55) AND SETTING DEADLINE FOR PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS**

      Plaintiff Casimir E. Kielbasa, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants—Stephanie Reynolds, Litisha Ramus and Bradley Friend—violated his constitutional rights when he was incarcerated at the Racine County Jail. The court screened the complaint and allowed the plaintiff to proceed a claim that the defendants violated the Fourteenth Amendment when they did not let him have the prescribed medication he took for severe pain. Dkt. No. 9 at 7. The three defendants are represented by separate counsel. On August 19, 2024, they filed a joint motion for summary judgment on exhaustion grounds. Dkt. No. 47.

      This order addresses several motions the plaintiff filed both before and after the defendants filed their summary judgment motion: his motion for

1

sanctions, dkt. no. 41, motion to seal/protect the integrity of his medical records, dkt. no. 51, motion to appoint counsel, dkt. no. 53, and motion to dismiss, deny or stay defendants' motion for summary judgment, dkt. no. 55.

## I. Plaintiff's Motion for Sanctions (Dkt. No. 41)

The plaintiff contends that defendants Ramus and Friend violated the court's screening order because they engaged in discovery before the court issued its June 17, 2024 scheduling order. Dkt. No. 41 at 1. The plaintiff states that these defendants released his jail medical records without the plaintiff's authorization. Id. at 3. He says that he believes defendant Friend acted maliciously, and that defendants Ramus and Friend acted to gain an unfair advantage in this litigation. Id. at 4. He asks the court to impose sanctions on them. Id. at 5.

Defendant Friend contends the court should deny the plaintiff's motion. Dkt. No. 44. According to Friend, the plaintiff was not prejudiced by the defendants having exchanged information and documents before the scheduling order was issued because the plaintiff was copied on all exchanges. Id. at ¶5. He also asserts that the plaintiff has put his medical condition at issue by filing this case and therefore waived physician patient privilege. Id. at ¶3 (citing Fed. R. Evid. 500, Wis. Stat. §905.04(4)(c)). Finally, Friend argues that the court's screening order was not understood to do anything other than protect the plaintiff from being served discovery requests and any confusion caused by pre-scheduling order requests; it was not understood to be designed to prevent represented parties from exchanging information and documents

2

with disclosures of that information and those documents to the plaintiff. Id. at ¶8.

At the end of the November 17, 2023 screening order, the court ordered that "the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions." Dkt. No. 9 at 9. The plaintiff is correct; the defendants *did* violate that order by conducting discovery prior to the June 17, 2024 scheduling order. But "[s]anctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." Salmeron v. Enterprise Recovery Systems, Inc., 579 F.3d 787, 793 (7th Cir. 2009) (citing Maynard v. Nygren, 332 F.3d 462, 470-71 (7th Cir. 2003)). District courts "must exercise caution and restraint" in exercising that inherent power to impose sanctions. Id. (citing Schmude v. Sheahan, 420 F.3d 645, 650 (7th Cir. 2005)). The court agrees with defendant Friend that the plaintiff has not been prejudiced by the exchanges, and the court finds no indication that the defendants acted maliciously. Regarding the release of the plaintiff's medical records, the plaintiff's medical condition *is* at issue in this case because the plaintiff claims the defendants did not provide him adequate medical care. It is reasonable for the defendants to exchange information regarding the plaintiff's medical condition.

The plaintiff has not shown that sanctions are warranted.

## II. Plaintiff's Motion to Seal/Protect Medical Records (Dkt. No. 51)

The plaintiff contends that the court should issue an order to seal and protect the integrity of his medical records. Dkt. No. 51 at 2. He states that he is skeptical as to the integrity of his Racine County Jail medical records because, as described above, defendant Friend was allowed to access them before the court issued its scheduling order. Id. at 1. The plaintiff argues that the defendants colluded with impunity to allow Friend to access his medical records and that the court should "immediately order to seal/protect the integrity of [the plaintiff's] pretrial medical records." Id. at 2.

Because the plaintiff has put his medical condition at issue by filing this case, the defendants are entitled to review his medical records. See Wis. Stat. §905.04(4)(c) ("There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical , mental or emotional condition of a patient in any proceedings in which the patient relies upon the condition as an element of the patient's claim or defense[.]"). "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." In re Specht, 622 F.3d 697, 701 (7th Cir. 2010). The Seventh Circuit has held that there is a general presumption that judicial records are public. Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999). That presumption "can be overridden only if . . . there is good cause for sealing a

4

part or the whole of the record in that case." Id. (citations omitted). See also Civil Local Rule 79(d)(3) (E.D. Wis.).

At this point, the defendants have not filed on the court's public docket any of the plaintiff's medical records. If he believes that his medical records contain highly sensitive information that he would not want to be filed on the public docket, the plaintiff should consult with the defendants and notify them in writing of the documents he believes should be restricted from public view. If the defendants later file sensitive medical information on the public docket without restricting them from public view, the plaintiff may file a motion to restrict access to records. See Civil L.R. 79(d). At this point, the plaintiff's motion is premature and the court will deny it.

### III. Plaintiff's Motion to Appoint Counsel (Dkt. No. 53)

The plaintiff has filed a motion to appoint counsel. Dkt. No. 53. He says that he takes multiple psychiatric medications that have been taking a toll on his cognitive abilities and that this case has become increasingly complex with medical terminology he does not understand. Id. at 1. The plaintiff states that the defendants have taken an unfair advantage and that he is at even more of a disadvantage than a typical unrepresented litigant. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too

5

many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the

plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has shown that he made a reasonable attempt to find a lawyer on his own, so he has met the first requirement for recruitment of counsel. But at this case at this stage, the court finds that the plaintiff has demonstrated he is competent to litigate the case himself. The defendants have filed a motion for summary judgment on exhaustion grounds, arguing that the plaintiff did not exhaust his administrative remedies through the inmate grievance system before filing this lawsuit. The plaintiff's filings up to now show that he is competent to respond to the defendants' motion. The defendants' motion does not address the *merits* of the plaintiff's medical care claim; the motion relates only to whether the plaintiff exhausted his administrative

7

remedies by following the rules for filing institutional grievances before filing this case. The court will give the plaintiff more time to respond to the defendants' motion, but at this point, it will deny without prejudice his motion to appoint counsel. If the case moves beyond the motion for summary judgment based on exhaustion grounds and the petitioner believes that he is not capable of taking the next necessary steps, he may renew his motion to appoint counsel.

### IV. Plaintiff's Motion to Dismiss, Deny or Stay Defendants' Motion for Summary Judgment (Dkt. No. 55)

The plaintiff states that he has not had enough time to acquire the appropriate documentation and evidence to refute the claims made by the defendants. Dkt. No. 55 at 1. He states that evidence exists to refute their claims but that due to the defendants filing their motion for summary judgment "excessively early," he has not yet been provided (through discovery) with the evidence he needs to refute their arguments. Id.

As a threshold matter, the plaintiff should be aware that the defendants did not file their motion to dismiss on exhaustion grounds "excessively early." The court's June 17, 2024 scheduling order set *two* deadlines for filing summary judgment motions: a deadline of August 19, 2024 for the defendants to file a motion for summary judgment on *exhaustion* grounds, and a deadline of December 20, 2024 for parties to file motions for summary judgment on the *merits* of the plaintiff's inadequate medical care claims. Dkt. No. 36. The defendants filed their motion for summary judgment on *exhaustion* grounds on August 19, 2024, which was the deadline for doing so.

8

In their joint motion for summary judgment, the defendants contend that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 47. Their argument is simple—they allege that in all the grievances the plaintiff filed while he was at the Racine County Jail, he did not file *any* grievances about the defendants' alleged failure to provide him his prescribed medication. Id. at 2. The motion does not challenge the plaintiff's claims that he was denied adequate medical care, so the plaintiff does not need discovery related to the merits of those claims to respond to the motion. He needs only to respond to the defendants' argument that he didn't file any grievances about that allegedly inadequate medical care. And the defendants have provided him the information he needs to respond. In Exhibit B to the declaration of Melissa Gonzalez, the defendants provided the plaintiff's history of submitting grievances via the kiosk system. Dkt. No. 50-2. That is what they base their exhaustion argument on; the plaintiff may use that evidence to respond.

The court will not dismiss, deny, or stay defendants' motion for summary judgment on exhaustion grounds, but it *will* give the plaintiff more time to file his response to the motion.

**V. Conclusion**

The court **DENIES** the plaintiff's motion for sanctions. Dkt. No. 41.

The court **DENIES AS PREMATURE** the plaintiff's motion to seal medical records. Dkt. No. 51.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 53.

The court **DENIES** the plaintiff's motion to dismiss, deny or stay defendants' motion for summary judgment. Dkt. No. 55.

The court **ORDERS** that the plaintiff must file his response to the defendants' joint motion for summary judgment on exhaustion in time for the court to *receive it* by the end of the day on **October 25, 2024**. If the court does not *receive* the plaintiff's opposition brief and supporting materials (or a request for more time to provide those materials) by the end of the day on October 25, 2024, the court may decide the defendants' summary judgment motion without input from the plaintiff.

Dated in Milwaukee, Wisconsin this 20th day of September, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**